IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JEFFREY KENNETH COX, BEATRICE ZAMVITO COX, | § § § | |
| *Plaintiffs*, | § § | 5-18-CV-01226-FB-RBF |
| vs. | § § | |
| MATTHEW DAVID BLACK, PROFESSIONAL PERFORMANCE DEVELOPMENT GROUP, INC., DONALD L. MOONEY ENTERPRISES, LLC DBA NURSES ETC STAFFING, | § § § § § § | |
| *Defendants*. | | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This case presents a jurisdictional knot that has taken some time, as well as development of the pleadings and record, to untangle. The case, at this point, has a somewhat unusual procedural history given that jurisdictional questions remain at issue. The case was initially removed to federal court based on asserted substantial federal questions touching on, among other things, federal-officer removal under 28 U.S.C. § 1442(a), the purported need to interpret federal statutes to resolve the claims, and the Federal Tort Claims Act (FTCA). After removal, there was an unsuccessful effort to obtain remand. Since then, however, there have been multiple pleading amendments and further development of the jurisdictional record. Although the case is now set for its next phase, that phase will occur in state court if this Report and Recommendation is adopted by the District Court.

Although the Court denied a motion to remand, the removal was procedurally flawed for a reason not raised in the motion, and—more crucially—the justifications previously offered for the

1

exercise of federal question jurisdiction all fall short on the present, more developed jurisdictional record; it's clear now federal jurisdiction is lacking. On the present record, the doctrine of federal-officer removal, the first justification offered for removal, is inapposite to this case. And remand shouldn't be totally unexpected here. In federal-officer-removal cases remand is warranted where a "colorable federal defense" supporting removal turns out to be unmeritorious once examined closely on a more fulsome record by the federal court. *See Mesa v. California*, 489 U.S. 121, 125, 133-34 (1988). Likewise, interpretation of federal statutes is not necessary to a resolution of Plaintiffs' claims, notwithstanding contrary suggestions offered in support of removal. And, finally, the claims asserted don't implicate the FTCA, the Gonzalez Act, or any federal question sufficient to warrant further exercise of federal jurisdiction. *See* 28 U.S.C. §§ 1331 (federal question jurisdiction), 1441(a) (removal); 1447(c) (procedures following removal). Claims against the individual Defendant Matthew Black involve intentional torts, related to sexual assaults, committed outside the course and scope of his employment. Those claims don't involve the FTCA and are amenable to resolution in state court. And negligence-based claims asserted against the independent-contractor business-entity Defendants don't implicate the FTCA, its waiver, or its exceptions to the waiver. In the FTCA context too, remand after development of the jurisdictional issue is contemplated by the relevant statute. *See* 10 U.S.C. § 2679(d)(3) ("If . . . the district court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court.").

Ultimately, the only substantial issue of federal law presented here involves a federal *jurisdictional* inquiry. While the Court always has jurisdiction to address its jurisdiction, that

threshold jurisdictional issue is resolved herein. Because the Court has determined there is no federal jurisdiction, remand is the next step.[1]

\* \* \*

This Report and Recommendation stems from and concerns the following: (1) the Motion for More Definite Statement, filed by Defendant Professional Performance Development Group ("PPDG"), Dkt. No. 75; (2) the Motion for Summary Judgment, filed by Defendant Donald L. Mooney Enterprises LLC d/b/a Nurses Etc Staffing ("Mooney"), Dkt. No. 77; and (3) the Motion to Dismiss and Alternative Motion for Summary Judgment, filed by Defendant PPDG and joined by Mooney, Dkt. No. 78.[2] All pretrial matters in this action have been referred for resolution pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 14. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons discussed below, this case should be **REMANDED** to the 285th Judicial District Court of Bexar County, Texas. There is no substantial federal question presented and, hence, no federal jurisdiction. All pending Motions, *see* Dkt. Nos. 75, 77, & 78, should therefore be **DISMISSED AS MOOT**.

### Factual and Procedural Background

This case arises out of the 2016 sexual assault of servicemember Jane Doe by Defendant Matthew David Black.[3] The assault occurred while Doe was a patient in the psychiatric ward of the

---

[1] *See, e.g.*, *id.* § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Gonzalez v. Wks. Marine, Inc.*, 203 F. App'x 574, 575 (5th Cir. 2006) (affirming reconsideration of district court's prior refusal to remand).

[2] *See* Sept. 16, 2020 text order granting Mot. to Join, Dkt. No. 79.

[3] Defendant Black has been convicted of assaulting Doe and hasn't appeared or otherwise defended himself against those allegations here. PPDG and Mooney also don't dispute that Black committed the assaults in the manner alleged by Plaintiffs.

San Antonio Military Medical Center ("SAMMC"), a U.S. medical treatment facility owned and operated by the federal government. At the time of the assault, Black—a civilian—was working in SAMMC's psychiatric ward as a certified nursing assistant. Defendant PPDG directly hired and "vett[ed]" Black. Dkt. No. 78 at 29, 32, 36 (PPDG Resp.); Dkt. No. 78-9 (Black personnel file). PPDG subcontracted with Mooney to "supply qualified personnel" to work at SAMMC. *See* Dkt. No. 78-4, 78-5 (PPDG-Mooney Subcontract & Amendments). Mooney, in turn, had a prime contract with the Government. *See* Dkt. No. 78-2 (Mooney-US Prime Contract). In sum, the federal government contracted with Mooney, Mooney contracted with PPDG, and PPDG hired and vetted Black.

On November 26, 2018, Doe[4] sued Defendants PPDG, Mooney, and Black in Bexar County state court. *See* Dkt. No. 1 at 8-17. The Original Petition raised only claims under state law causes of action. *See id.* The petition faulted PPDG and Mooney for negligently hiring, training, and supervising Black—negligent acts Doe claimed foreseeably placed Black in a position to assault her. And although not explicitly stated, the Original Petition appeared to bring state-law claims against Black for assault and battery.[5]

On November 26, 2018, PPDG—with Mooney's consent but not Black's[6]—removed the case, citing federal question jurisdiction. *See* Dkt. No. 1. In its Notice of Removal, PPDG cited three

---

[4] On May 13, 2020, Doe committed suicide. *See* Dkt. No. 69. Accordingly, Doe's parents Jeffrey Kenneth Cox and Beatrice Zamvito Cox have been substituted as Plaintiffs. *See* Fed. R. Civ. P. 25(a).

[5] Doe later clarified and refined her claims against Black through her third amended and live complaints. *See* Dkt. Nos. 57 & 74.

[6] The record reflects that service was effected on Black on October 23, 2018—over a month before PPDG's removal. *See* Dkt. No. 1 at 54. Accordingly, PPDG's removal here appears to have been procedurally defective. See 28 U.S.C. § 1446(b)(2)(A) (providing that all defendants who have been "properly joined and served must join in or consent to the removal of the action"); *Doe v. Kerwood*, 969 F.2d 165, 167-69 (5th Cir. 1992).

"federal questions" in support of removal. PPDG claimed first that because Black served under a personal-services contract subject to 10 U.S.C. §§ 1089 & 1091, a determination of "what duties and obligations are owed to [Doe] as they relate to [the prime and subcontracts]" would require the interpretation of federal statutes, rendering the action "arising under . . . the laws . . . of the United States." *Id.* (citing 28 U.S.C. § 1331). PPDG next claimed it was entitled to federal-officer removal because Black was "trained, supervised and directed at all times by federal officers." *Id.* at 3. Finally, PPDG argued that pursuant to the Gonzalez Act, 10 U.S.C. § 1089(a), Black should be treated as a federal government employee, providing PPDG with "a defense of immunity under the Federal Tort Claims Act [FTCA]" and rendering the United States a "necessary party" in this action. *Id.* at 3-4.

On December 20, 2018, Doe moved to remand the case for lack of subject matter jurisdiction. *See* Dkt. No. 5. The District Court—operating with a limited jurisdictional record—denied the Motion for failing to demonstrate an entitlement to the relief requested. *See* Dkt. No. 10. Doe, with leave of Court, then amended her complaint on several occasions[7] to significantly clarify and refine the factual bases of her original claims, and to assert an additional alternative cause of action for medical malpractice in violation of the Texas Medical Liability Act, Tex. Civ. Prac. & Rem. Code § 74.001 *et seq*. *See* Dkt. Nos. 33, 57, 74.

PPDG and Mooney now seek dismissal of Plaintiffs' claims—via either Rule 12(b)(1) or on summary judgment—on the grounds that Plaintiffs' state law tort claims are precluded by the

---

[7] *See New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1503 (3d Cir. 1996) (recognizing that "[t]he rule that jurisdiction is assessed at the time of the filing of the complaint has been applied only rarely to federal question cases"); *Apex Golf Props., Inc. v. Allstate Ins*. Co., 2013 WL 5724523, at *1 (S.D. Tex. Oct. 21, 2013) (considering in fraudulent joinder context, the first amended state complaint the "operative pleading" but referencing the second amended federal complaint in "interpreting the causes of action or theories alleged in the first amended complaint").

Gonzalez Act. *See* Dkt. No. 78. Alternatively, PPDG and Mooney argue that the summary judgment evidence establishes they didn't owe Doe a duty to protect against Black's unforeseeable criminal conduct, and that, even if they did, there's no evidence they breached that duty. *See id.*[8] Finally, PPDG seeks a more definite statement to clarify whether or to what extent Plaintiffs are asserting a health care liability claim against it. *See* Dkt. No. 75.

**Analysis**

Doe never asserted any federal cause of action to advance her claims. Indeed, the Notice of Removal never cited a federal cause of action as providing a basis for removal. It instead invoked the following three bases for the Court's exercise of federal question jurisdiction: (1) the doctrine of federal-officer removal; (2) PPDG's contention that a substantial question involving the interpretation of federal law is necessary to the case; and (3) the federal Gonzalez Act. None of these bases supports the exercise of federal jurisdiction in this case. *See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 87 (1991) ("Since the district court had no original jurisdiction over this case[,] . . . a finding that removal was improper deprives that court of subject matter jurisdiction and obliges a remand under the terms of § 1447(c).").

> **A.  The Federal-Officer-Removal Statute Doesn't Provide a Basis to Keep the Case in Federal Court.**

The federal-officer-removal statute provides in relevant part:

> A civil action or criminal prosecution that is commenced in a State court and that is *against or directed to* any of the following may be *removed by them* to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or *any person acting under that officer*) of the United States or of any agency thereof, in an official or individual capacity, *for or relating to any act under color of such office* . . . .

---

[8] *See also* Dkt. No. 77 (Mooney Mot. joining in PPDG's motion but alternatively asserting that PPDG—not Mooney—was Black's employer)

28 U.S.C. § 1442(a)(1) (emphasis added). The test for removal under the statute requires a removing defendant to show that "(1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 454 (5th Cir. 2021). Accordingly, § 1442(a) provides a mechanism to "remove cases to federal court that ordinary federal question removal would not reach" because the statute "permits an officer to remove a case even if no federal question is raised in the well-pleaded complaint, so long as the officer asserts a federal defense." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (en banc). But it is possible that a case may be properly removed on the basis of a "colorable federal defense" only for the case to later be remanded once the defense is determined inapplicable or unavailing and there is no other basis for the exercise of federal jurisdiction. *See, e.g.*, *Jamison v. Wiley*, 14 F.3d 222, 238-39 (4th Cir. 1994) ("When a case has been properly removed under § 1442(a), the district court may remand it back to state court only if it thereafter discovers a defect in removal procedure or a lack of subject matter jurisdiction in the federal court."). This is because one of the goals of § 1442(a) is to permit the adjudication of a colorable federal defense by a federal court. *See Mesa*, 489 U.S. at 133.

Here, no Defendant was ever properly entitled to federal-officer removal, as will be discussed next. And because the Court herein determines that it lacks federal jurisdiction, the case must be remanded. *See, e.g.*, *Jamison*, 14 F.3d 222, 238-39.

    **1.**    *Removal by PPDG based on Black's status fails.* Defendants' only contention regarding federal-officer removal is that PPDG is entitled to removal because Defendant Black was "trained, supervised and directed at all times by federal officers, the medical professionals of SAMMC, pursuant to PPDG's subcontract to provide nursing assistants and other medical

employees." Dkt. No. 1 ¶ 5. Even accepting the validity of this contention for arguments sake, it would at most provide only Black—not PPDG or Mooney—standing to seek removal; PPDG and Mooney cannot rely on Black's status as a basis for removal when he has not done so. *See Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 607 (5th Cir. 2018) (holding that defendant lacked standing to assert federal-officer removal on co-defendant's behalf). Black never sought removal or consented to PPDG's removal of the case.

It also hasn't been shown here that any federal officer's direct supervision of certified nursing assistant Black could have been sufficiently "connected or associated with" the Black's intentional assaults of Doe to warrant federal-officer removal by Black. Plainly, no federal officer directed Black to sexually assault Doe. *See* 28 U.S.C. § 1442(a)(1); *see also* Dkt. No. 5 at ¶ 6 (raising this point). Cases in which this aspect of federal-officer removal were satisfied in arguably somewhat similar or analogous circumstances appear to involve primarily negligence-based claims, not intentional torts unrelated to the provision of medical or nursing care. *See, e.g.*, *St. Charles Surgical Hosp.*, 990 F.3d at 454 (citing cases). Defendants fail to explain how the intentional assault or battery unrelated to medical care that was committed here could be sufficiently "connected or associated with" a federal officer's oversight to warrant removal.

**2.** *Removal by Defendants based on PPDG or Mooney's status is untenable on this record.* Neither PPDG nor Mooney argues—now or previously in PPDG's Notice of Removal—that fulfilling their staffing obligations required *them* to "act[] pursuant to a federal officer's directions" or that *their* alleged negligence was "connected or associated with an act pursuant to a federal officer's directions." *Id.* (discussing elements a removing defendant must show to establish federal-officer removal). Even were they to so argue, nothing reflects that a federal officer "exert[ed] a sufficient level of subjection, guidance or control" over either PPDG or Mooney to satisfy the

"acting under" requirement of federal-officer removal. *Id*. Much the same is true with respect to the separate "connected or associated with" requirement. *Id*.

The undisputed evidence reveals instead that PPDG and Mooney independently selected and screened healthcare providers such as Black. The Government simply provided the "final yes or no" over hiring a candidate based on information PPDG and Mooney provided. *See* Dkt. No. 78-6 at 8 (A. Mooney Dep. 46:15-17); *see also* Dkt. No. 78 at 7-8 (outlining PPDG's hiring process). The fact that PPDG and Mooney fulfilled their staffing obligations pursuant to a regulated government contract doesn't change matters because "a private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official' even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 153 (2007); *see also St. Charles Surgical Hosp.*, 990 F.3d at 454.

For these reasons, there is no basis to exercise federal-officer removal jurisdiction here. Although the Court recognizes that courts must avoid a "narrow, grudging interpretation of § 1442(a)(1),"[9] PPDG and Mooney have fallen far short of meeting their burden under the statute. *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998) (explaining it is a defendant's burden to show federal jurisdiction even where the federal-officer-removal statute is invoked). Moreover, even if removal was originally justified because one or all of the arguments asserted in support of federal-officer removal involved a "colorable federal defense," it is clear now that there is no continuing basis to exercise federal jurisdiction in the case. Remand is therefore warranted.

---

[9] *Latiolais*, 951 F.3d at 290 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

### B. No Interpretation of Federal Contracts or Statutes Is at Issue So as to Supply Federal Question Jurisdiction.

Having discussed the federal-officer removal, the jurisdictional issues remaining are governed by the familiar well-pleaded complaint rule. Pursuant to that rule, federal question jurisdiction exists if a plaintiff pleads a federal cause of action or a plaintiff's right to relief under state law "requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Ca.*, 463 U.S. 1, 13 (1983). No federal cause of action has ever been raised here. And PPDG and Mooney's argument that removal was proper because the case "[n]ecessarily" requires the interpretation of federal statutes as they relate to the prime contract and subcontract fails. The mere fact that Doe mentioned in her state court pleadings that PPDG and Mooney were operating in connection with a personal-services contract, "which is regulated by various Federal Statutes," and that "any and all protections in the U.S. Code are waived"[10] doesn't change that the claims asserted arise under state law and no substantial federal question is wrapped up in their resolution.

Plaintiffs allege in their live pleadings that PPDG and Mooney's duties solely arise under Texas tort law, not any contract. Although not entirely clear, the state court pleadings also suggested that a duty arose by virtue of PPDG and Mooney's employment of individuals to work in a psychiatric ward, as opposed to by contract. *See* Dkt. No. 1 ¶ 13 ("Working in a psychiatric ward requires specialized training dealing with mentally ill patients, especially vulnerable females . . . ."). Moreover, Doe (and later the substituted Plaintiffs) maintained this somewhat unclear position in both the motion to remand and subsequent pleading amendments. Ultimately, however, the burden of establishing federal jurisdiction rests with the removing party. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1165 (5th Cir. 1988). PPDG and Mooney fail to carry that burden.

---

[10] *See* Orig. Pet. ¶ 15.

Presented here are only incidental federal issues, which don't to give rise to federal question jurisdiction. The only real context in which federal law is at issue here is jurisdictional; federal law must be examined only to confirm whether there is any substantial federal question presented in connection with the merits of any claim. As discussed in more detail below, there is no federal hook here beyond a jurisdictional inquiry.

### C. No Defendant Is Entitled to Removal Based on Gonzalez Act Immunity.

No named Defendant is entitled to immunity pursuant to the Gonzalez Act. Accordingly, remand is required.[11]

Understanding how and why the Gonzalez Act is central to the jurisdictional inquiry in this case requires some unpacking. The Act provides in relevant part:

> The remedy against the United States provided by [the FTCA] for damages for personal injury . . . caused by the negligent or wrongful act or omission of any physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel (including medical and dental technicians, nursing assistants, and therapists) of the armed forces . . . while acting within the scope of his duties or employment . . . shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter *against such physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel (or the estate of such person)* whose act or omission gave rise to such proceeding. This subsection shall also apply if the [above-described healthcare professional] is serving under a personal services contract entered into under section 1091 of this title.

10 U.S.C. § 1089(a) (emphasis added).

---

[11] *See* 10 U.S.C. § 1089(c) ("Should a United States district court determine on a hearing on a motion to remand held before a trial on the merits that the case so removed is one in which a remedy by suit within the meaning of subsection (a) of this section is not available against the United States, the case shall be remanded to the State court."); 10 U.S.C. § 2679(d)(3) ("If, in considering the petition [requesting that the Court find and certify that the employee was acting within the scope of his office or employment], the district court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court."); 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

Given that the federal Government and its employees typically enjoy sovereign immunity, the FTCA constitutes a limited waiver of that immunity and "provides a remedy for persons injured by an employee of the Government who was 'acting within the course and scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Palmer v. Flaggman*, 93 F.3d 196, 199 (5th Cir. 1996) (quoting 28 U.S.C. § 1346(b)) (emphasis omitted). In so doing, the FTCA "gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting within the scope of their employment." *Levin v. United States*, 568 U.S. 503, 506 (2013) (quoting 28 U.S.C. § 1346(b)(1).

The Medical Malpractice Immunity Act—otherwise known as the Gonzalez Act—in turn provides a brand of "immunity to military medical personnel acting within the scope of their employment." *Id*. "The Act provides this immunity to individual employees by requiring injured plaintiffs to proceed against the United States under the FTCA." *Id*. For an employee to qualify for this immunity, the employee must be a healthcare provider (1) directly employed by the government or (2) deemed an employee of the government because the provider was retained under a personal-service contract authorized by the U.S. Secretary of Defense and was acting within the course and scope of employment at the time of the alleged tort. *See id.*[12] In cases involving alleged medical malpractice based on negligence, "the FTCA's waiver of the Government's sovereign immunity is not in doubt." *Levin*, 568 U.S. at 513. For claims based on an intentional tort like battery, the

---

[12] *See also Levin*, 568 U.S. at 507-08 (discussing the interplay between the Gonzalez Act and the FTCA); Wright & Miller, 14 Fed. Prac. & Proc. Juris. § 3658.2 (4th ed. 2021) ("The Medical Malpractice Immunity Act, commonly known as the Gonzalez Act, shields specific classes of employees from personal liability and makes the FTCA the exclusive remedy against Armed Forces medical personnel.").

Gonzalez Act abrogates the FTCA's intentional-tort exception to its immunity waiver. *Id*. at 514-15. In either circumstance, therefore, if the Gonzalez Act applies under the FTCA, the claim must proceed in federal court. This, then, is the federal jurisdiction hook that Defendants invoke as justification for removing this case.

    **1.** *Black doesn't benefit from the Gonzalez Act.* There's no dispute that the prime contract between Mooney and the Government was a personal-services contract established pursuant to 10 U.S.C. § 1091. Indeed, the prime contract between Mooney and the Government specifies this.[13] Accordingly, if Black was acting within the course and scope of federal employment at the time of the alleged tort, he might be entitled to immunity under the Gonzalez Act as a federal employee. This same course-and-scope inquiry applies to determining whether the FTCA and its waiver of sovereign immunity could apply in the first place to claims against Black. *See Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006) (noting, "this [FTCA] waiver of sovereign immunity only applies when the tortfeasor acts within the scope of his employment"). Once it is determined

---

[13] The prime contract provides in relevant part:

> This is a personal services contract (as defined by FAR Subpart 3 7. I 04) and is intended to create an employer-employee relationship between the Government and the individual health care providers only to the extent necessary for providing the health care services required under the contract. The performance of health care services by the individual health care providers (HCPs) under a personal services contract are subject to day-to-day supervision and control by health care facility personnel comparable to that exercised over military and civil service HCPs engaged in comparable health care services. Any personal injury claims alleging negligence by the individual HCPs within the scope of the HCP's performance of the personal services contract shall be processed by DoD in the same manner as claims alleging negligence by DoD military or civil service HCPs. The contract does not create an employer-employee relationship between the Government and any corporation, partnership, business association or other party or legal entity with which the HCP may be associated. The authority for this contract is 10 United States Code 1089 and 10 United States Code 1091.

*See* Dkt. No. 78-2 at 75 ¶ 1.4.1.

that an individual like Black was not acting in the course and scope of his employment, the claims against him "shall be remanded to the State court." 28 U.S.C.A. § 2679(d)(3).

There's no disputed fact issue with respect to whether Black was somehow acting within the course and scope of his employment when he repeatedly sexually assaulted Doe. Plaintiffs allege—and Defendants don't dispute—Black repeatedly sexually assaulted Doe over a weeks-long period. Black took Doe into a storage room, pinned her against a wall, and forced her to engage in sexual acts. *See* 4th Amend. Compl. Black took sexually explicit photographs of the assaults. *See id.* Such behavior is outside the course and scope of Black's employment, as a matter of law. *See Bodin*, 462 F.3d at 487 (finding under Texas law that psychiatrist acted outside the scope of his employment when he sexually assaulted two patients during treatment).

The fact that the Government may have assigned Black to work in the psychiatric ward at the time of the assaults and supervised Black's day-to-day activities, as PPDG and Mooney contend, is of little consequence in the course-and-scope inquiry here. Black obviously wasn't performing or furthering his job duties when he removed Doe to the storage room and assaulted her, as has been alleged without contradiction here. *See, e.g.*, *Bodin*, 462 F.3d at 487; *see also Hamburg v. U.S. Postal Serv.*, No. CIV.A. H-10-2186, 2010 WL 4226461, at *4 (S.D. Tex. Oct. 20, 2010) (finding post office employee wasn't acting in course and scope of employment when he sexually assaulted plaintiff on mail route). This is not a case involving a colorable or disputed question concerning whether the assaultive conduct was part of an employee's job, as might be the case if, for example, a physician were accused of assault due to a physical examination of a patient. There is no connection here, at all, between the assaults and Black's job duties except that Black's job provided him ample opportunity to assault the vulnerable Doe.

It also would serve no purpose to join the United States—as PPDG and Mooney urge the Court to do here[14]—so that the United States can state the obvious with respect to whether Black was acting in the course and scope of his alleged federal employment. In FTCA cases, the Attorney General can certify that an employee's acts were performed in the course and scope of employment. *See* 28 U.S.C. § 2679. The Attorney General has not done so here. And for good reason. As a certified nursing assistant, Black's duties would've included looking after the well-being of patients admitted to the SAMMC's psychiatric ward. They didn't include sexual assault.[15] Nor have PPDG and Mooney introduced any competent evidence suggesting a contrary conclusion or even a material fact dispute germane to this point. Moreover, and perhaps more to the point, it is Black who may request that the United States be joined to weigh in on the course-and-scope inquiry, yet Black has never made any such request. PPDG and Mooney don't adequately explain how and why they, once again, ought to be entitled to step into Black's shoes and assert a right the statute's text affords only to him. *See* 28 U.S.C. § 2679(d)(3) ("In the event that the Attorney General has refused to certify scope of office or employment under this section, *the employee* may at any time before trial petition the court to find and certify that *the employee* was acting within the scope of his office or employment." (emphasis added)).

2. *PPDG and Mooney also aren't entitled to immunity.* Here, PPDG and Mooney—staffing companies that provide individual employees to the Government pursuant to personal-services contracts—aren't entitled to immunity under the Gonzalez Act either. The plain

---

[14] *See* Dkt. No. 78 at 22.

[15] *See, e.g.*, *Hamburg*, 2010 WL 4226461, at *4 ("When an employee allegedly commits a sexual assault on a third person, that is not generally within the scope of his authority as an employee because it is not in furtherance of the employer's business or for the accomplishment of an object for which the employee is employed, and is motivated by personal sexual gratification. Even when an employee commits a sexual assault while purporting to act within the scope of his employment, as in *Bodin*, [462, F.3d at 485] that is not sufficient if that is simply a pretense.").

text of the Act as well as case law make clear that the Act applies to *individual* healthcare *employees*. And even if companies like PPDG and Mooney could in some circumstances avail themselves of Gonzalez Act immunity, Mooney and PPDG were independent contractors to whom the Act doesn't apply, and there are no disputed facts germane to this conclusion.

"The critical factor in determining whether an individual is an employee of the government or an independent contractor is the power of the federal government to control the detailed physical performance of the individual." *Linkous v. United States*, 142 F.3d 271, 274 (5th Cir. 1998). Here, PPDG and Mooney's briefing fixates on whether Black was a federal employee for purposes of the Gonzalez Act. But Black's employment status doesn't resolve the companies' entitlement to Gonzalez Act immunity in connection with the negligence-based claims against them. The prime contract recognizes that individual employee healthcare providers, such as Black, are considered Government employees "to the extent necessary for providing the health care services required under the contract." Dkt. No. 78-2 at 75 ¶ 1.4.1. But there's nothing to suggest that PPDG and Mooney are entitled to piggyback on Black's status. To the contrary, PPDG and Mooney are on different footing than Black, as reflected by the undisputed facts in the further-developed record now available to the Court.

To start, the Court contrasts the nature of the claims against Black with the claims against Mooney and PPDG. Black is sued here for committing battery and assault, or a string of assaults. *See* 4th Amend. Compl. PPDG and Mooney are not sued under vicarious liability theories. Rather, in sharp contrast to the claims against Black, they are sued for negligence in connection with the hiring, training, and retention of Black. *Id.*[16] Mooney and PPDG point to nothing suggesting the

---

[16] Although Plaintiffs' live complaint also summarily asserts a claim for negligent supervision, all of the facts giving rise to this claim concern PPDG and Mooney's hiring and vetting process—not their failure to supervise Black at SAMMC.

Government controlled the performance of their contractual staffing obligations. Instead, both companies concede that PPDG was responsible for performing "all necessary vetting" of employees, including locating and screening applicants, completing background checks and verifications of prior work experience, investigating certifications as well as credentials, and advising applicants of company policies like those relating to sexual harassment. *See* Dkt. No. 78 at 7-12, 29. Those are hallmarks of an independent-contractor relationship.

The companies also don't point to any contract language that could reasonably be construed to create an employer-employee relationship between either company (or both) and the Government. To the contrary, the prime contract repeatedly refers to Mooney as a "contractor" and states that there is *no* employer-employee relationship between the government and any legal entity with which the healthcare provider—here, Black—may be associated. *See* Dkt. No. 78-4 ¶ 1.4.1. And, further, Mooney and PPDG don't argue that they're essentially "employees" of the Government for purposes of the Gonzalez Act. *See, e.g.*, *Coa v. Wilson*, No. CIV.A. 07-7464, 2007 WL 4234097, at *3 (E.D. La. Nov. 29, 2007) (remanding case originally removed based on private entity's defense that it was a government employee entitled to derivative immunity under the FTCA, where contract was silent on the matter and defendant didn't brief the issue of the government's control).

Mooney and PPDG provide no authority suggesting that they're entitled to some form of derivative immunity under the Gonzalez Act. And case law suggests otherwise in providing that the FTCA doesn't extend to acts of independent contractors. *See Linkous*, 142 F.3d at 275.

For all these reasons, no Defendant here is entitled to Gonzalez Act immunity, and the FTCA is therefore also not at issue. *See, e.g.*, *Palmer*, 93 F.3d at 199 (noting FTCA provides a remedy for

those injured by an employee of the Government acting within the course and scope of his office or employment). [17]

The Court, having determined that there is no federal jurisdiction present, must remand the case. Accordingly, the Gonzalez Act mandates remand of Plaintiffs' claims. These are state law claims between non-diverse parties. This case belongs in state court.

### D. The Removal Was Procedurally Defective.

Finally, the Court notes that remand is also warranted due to a procedural flaw in removal. Black was served prior to the case's removal but never consented to removal,[18] rendering PPDG's removal procedural defective. *See* 28 U.S.C. § 1446(b)(2)(A) (providing that all defendants who have been "properly joined and served must join in or consent to the removal"); *Doe v. Kerwood*, 969 F.2d 165, 167-69 (5th Cir. 1992). Although procedural defects in removal are generally subject to forfeiture, here Doe timely moved to remand the case. And while Doe's motion didn't raise this precise procedural defect, that failure doesn't prevent the Court from raising it now. *See Schexnayder v. Entergy Louisiana, Inc.*, 394 F.3d 280, 284 (5th Cir. 2004) ("So long as a procedurally-based motion for remand is timely filed, and the order is not affirmatively based on a non-§ 1447(c) ground, we will not review a district court's remand order.").

---

[17] *See also* 10 U.S.C. § 1089(c);10 U.S.C. § 2679(d)(3).

[18] The record reflects that service was effected on Black on October 23, 2018—over a month before PPDG's removal. *See* Dkt. No. 1 at 54

## Conclusion and Recommendation

For the reasons discussed above, it is recommended that this case be **REMANDED** to the 285th Judicial District Court of Bexar County, Texas for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c), (d). All pending Motions, Dkt. Nos. 75, 77, & 78 should therefore be **DISMISSED AS MOOT**.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this

report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 25th day of June, 2021.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE